In re Estate of Mollie Harris.

In re Estate of Julian T. Harris.

J. V. Arney, Administrator, Appellee, v. Elmer S. Harris, Executor, Appellant.

No. 46870.

June 18, 1946.

Dio S. McGinnis, of Leon, and Carl S. Missildine, of Des Moines, for appellant.

R. B. Hawkins, of Leon, R. E. Killmar, of Osceola, and Martha Hoffman, of Leon, for appellee.

Hale, J.—Mollie Harris and Julian T. Harris were wife and husband. Mrs. Harris died testate without issue on February 6, 1942. Julian T. Harris was appointed and qualified as executor, and on October 30, 1944, the court approved an annual report of said Julian T. Harris, as executor, showing total receipts of $7,378.41 and disbursements of $7,251.20, and assets on hand October 4, 1944, of $4,127.21. Julian T. Harris

died January 2, 1945, and J. V. Arney was appointed administrator with will annexed of the estate of Mollie Harris.

After the death of Julian and before the Mollie Harris estate was fully administered Elmer S. Harris became the executor of the estate of Julian T. Harris. After his appointment as executor of Julian's estate Elmer S. Harris prepared a final report in the Mollie Harris estate showing the receipt of $4,051.21, the payment of various claims, and a balance on hand of $1,608.36. To this report and the annual report J. V. Arney, as administrator of the Mollie Harris estate, filed objections, specifically objecting to certain payments to Ella Richardson (sister of the deceased Julian) for care and services rendered to her brother, and to the payment of a claim of $732.45 for a monument, totaling $2,637.45, and $38.09 for medical services, and to a further sum of $442.85 for medical and hospital expenses, and for personal care and services.

The said J. V. Arney, as executor, had previously filed a contingent claim against the estate of Julian in the sum of $2,675.54, covering items in his objection which he claims, and by amendment added $442.85. It is alleged in said contingent claim that said items were in payment for care and services rendered to the said Julian T. Harris individually after the death of Mollie Harris and that there is no provision under the will of said Mollie Harris under which the said Julian T. Harris was authorized and permitted to pay his individual personal expenses from said estate.

The claim and the objections to the report, which cover the same disbursements, were consolidated for the purpose of hearing. There is no dispute about the amount of money paid out of the estate of Mollie Harris by her executor, but the only question to be determined was whether, under the will of Mollie Harris, her husband was entitled to pay out of the funds in his hands as executor of his wife's estate certain expenses for his care and attention and medical services rendered to him after her death and for the monument.

The trial court held that under the second paragraph of the will of Mollie Harris, deceased, her husband, Julian T., received only a life estate in the property of which she died seized, and that the administrator of Mollie Harris' estate

(Arney) should recover on all the items in his claim against the estate of Julian T. Harris, except the item of $732.45 dated July 1, 1942, being the amount approved by the district court in payment of a monument to mark the grave of Mollie Harris.

Elmer S. Harris, as executor of the Julian T. Harris estate, appeals as to the amount allowed in favor of the Mollie Harris estate, and will hereafter be referred to as appellant. J. V. Arney, as administrator of Mollie Harris' estate, appeals from that part of the judgment rendered against the Mollie Harris estate, which denies him the recovery of the $732.45 spent by Julian, as executor, for the monument.

The question here is whether Julian T. Harris, under the will of Mollie Harris, was entitled to use the funds in his hands, derived from her estate, to pay certain personal expenses for services rendered to him, and for medical care and hospitalization after her death. The will of Mollie Harris, after directing payment of debts and funeral expenses, provides:

"Second: Subject to the foregoing provision, it is my will and desire and I hereby give, devise and bequeath to my beloved husband, Julian T. Harris, should he survive me, a life interest and estate in and to all property of which I may die seized, whether real, personal or mixed, of whatsoever kind and character and wherever the same may be situated, including all of my undivided interest in and to the estate of my father, John Woodmansee, deceased, whether real, personal or mixed, of whatsoever kind and character and wherever situated, to be held by him in trust for his own use and benefit during his natural lifetime, he to have the full use, benefit and income from all of said property, including all interest, rents and other income of whatsoever kind and character, for his use and benefit as he may deem best, as long as he may live, and to have the right at any time he may desire and think it expedient for his financial benefit and that of my estate, to sell any and all of the real estate and personal property of which I may die seized, and either use or reinvest the proceeds thereof in other real estate or securities as he may deem to the best interests of himself and my said estate, and continue to

receive the interest, income or rents from the same as the case may be; the same to be in lieu of his dower interest and distributive share in and to my estate as my surviving husband."

"Third: Subject to the life interest and estate hereinbefore bequeathed to my said husband, Julian T. Harris," the testator gives to relatives all of her property of every kind and character, apportions it among them, giving to the various relatives one or more eightieths thereof.

The fifth paragraph of the will nominates and appoints her husband as sole executor and trustee. Both parties agree in argument that the will creates a life estate.

The contention of Elmer T. Harris as executor of the Julian T. Harris estate is that Julian had a right to use the principal of the Mollie Harris estate for his own use and benefit. He claims that the will of Mollie Harris gave to her husband a life estate in all of her property, coupled with a power of disposal under which he could use the principal of the estate as he saw fit, and the heirs of Mollie Harris were entitled only to that part of the estate which remained at his death. He argues that the provision in paragraph 2 of the will that her husband should have the right to sell and either use or reinvest indicates that the husband had a choice either to use the proceeds for his own benefit or to convert—that is, that he may do one or the other. The will, however, does not state that the husband could use the principal of the estate "as he saw fit." The power granted to him to sell real estate and personal property is limited to "either use or reinvest the proceeds thereof in other real estate or securities as he may deem to the best interests of himself and my said estate."

I. Appellant does not contend that a devise of a life estate in the first devisee with power of disposal converts the estate into a fee simple. He maintains that the language of this will granted the power to Julian T. Harris to convert the entire property or any part of the estate to his own personal ownership and enjoyment. He cites various cases in support of his contention. The will in In re Estate of Cooksey, 203 Iowa 754, 208 N. W. 337, gave ample power to the widow to

sell and to dispose of the residue. The residue not disposed of by the wife was disposed of otherwise. The provisions of the two wills were entirely different, as they were also in Podaril v. Clark, 118 Iowa 264, 91 N. W. 1091, and Steiff v. Seibert, 128 Iowa 746, 105 N. W. 328, 6 L. R. A., N. S., 1186. His contention is not supported by Olson v. Weber, 194 Iowa 512, 187 N. W. 465, 27 A. L. R. 1370, in which the will grants a full power of disposal, *as she may see fit,* with remainder over of the part undisposed of. And so in the will in Volz v. Kaemmerle, 211 Iowa 995, 997, 234 N. W. 805, 806, the widow is given full power of disposal *as she may see fit* with remainder over of ''whatever of my property may be left.''

None of our decisions cited by appellant refers to provisions of a will in substance the same as the will under consideration. The question of the effect of a devise in a will granting a life estate with power of disposal has occupied the attention of the court many times, and there can be no absolute rule of interpretation laid down which will cover the varying forms of devises. It would serve no useful purpose to review the many cases with their varying forms and provisions.

II. In all cases the intention of the testator must prevail and the endeavor in every case is to ascertain such intent. The intent in this case seems clear. The will first conveys a life interest to the husband as trustee, granting him the income for life. Second, as executor and trustee, he may sell any or all the property. Third, he may use or reinvest the proceeds of such sale to the best interests of *himself and the estate,* and continue to receive the income from the converted property; and fourth, when the life interest terminates all the property is to be distributed to certain named persons. Nowhere in the will does there appear anything more than the use of the income and the power to change the form of the investment property as it might be to the interests of the parties concerned, not only to the interest of the person receiving the income but the interest of the estate. Both must be considered under the terms of the will.

The language of the will indicates nothing more than a life estate with power to convert. In considering the meaning of a will we should take it by the four corners and give effect

to all the language where possible. So here, we should consider division 3 where, as we have indicated, the testatrix speaks of the interest bequeathed to her husband as a life interest, saying, "Subject to the life interest and estate hereinbefore bequeathed to my said husband." Also, her husband is named as trustee as well as executor. Under the terms of the will we hold that the duty of the executor is not only to settle and distribute the estate but to have charge thereof as trustee to the parties in interest. Unquestionably the devisees and legatees named in paragraph 3 of the will have a vested interest. Olson v. Weber, supra. This interest is not in what remained of the estate after the sale or disposal of the principal or part thereof, but in the entire estate, since the devise to the legatees named in paragraph 3 was of all her property of which she died seized, subject only to the life interest in her husband. His duty as executor and trustee was not to dispose of the property for his own benefit, but to conserve the property for the use and benefit of all parties concerned.

III. Our holding therefore is that the will gave no authority to Julian T. Harris to apply to his personal use any part of the funds of the estate of the deceased wife except the interest or income thereof. The record indicates that he had an estate of considerable size and any payments to his sister or for hospital or medical expenses should have been paid by him out of his own property instead of out of the property of which he was only trustee.

IV. The appellee objected to the allowance of a sum for the monument for Mollie Harris. The appeal from this allowance is not argued by the appellee and is therefore waived. But we might state that this was a legitimate expense of the Mollie Harris estate and the application therefor was properly ordered and the expenditure allowed by the court.

Our conclusion is that the ruling of the district court was right and should be affirmed on both appeals. The cost of this appeal will be taxed to appellant.—Affirmed.

GARFIELD, MANTZ, MILLER, OLIVER, SMITH, and WENNERSTRUM, JJ., concur.